**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | ) ) ) | |
| | ) | Case No. 16-cv-05314 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| LIGHTINTHEBOX HOLDING CO., LTD., LIGHT IN THE BOX LIMITED, LIGHTINTHEBOX TRADING (SHENZHEN) CO., LTD., DEFENDANT LIGHT IN THE BOX TRADING (SUZHOU) CO., LTD., LIGHT IN THE BOX TRADING (CHENGDU) CO., LTD., LANTING INTERNATIONAL HOLDING LIMITED, LITB, INC., LIGHTINTHEBOX INTERNATIONAL LOGISTIC CO., LIMITED, BEIJING LANTING GAOCHUANG TECHNOLOGIES CO., LTD., SHENZHEN LANTING HUITONG TECHNOLOGIES CO., LTD., and SHANGHAI OUKU NETWORK TECHNOLOGIES CO., LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (together, "Plaintiffs") hereby bring the present action against Defendants LightInTheBox Holding Co., Ltd., Light In The Box Limited, Lightinthebox Trading (Shenzhen) Co., Ltd., Defendant Light In The Box Trading (Suzhou) Co., Ltd., Light In The Box Trading (Chengdu) Co., Ltd., Lanting International Holding Limited, LITB, Inc., Lightinthebox International Logistic Co., Limited, Beijing Lanting Gaochuang Technologies Co., Ltd., Shenzhen Lanting Huitong Technologies

Co., Ltd., and Shanghai Ouku Network Technologies Co., Ltd. (collectively, "Defendants" or "LITB") and allege as follows:

## I. INTRODUCTION

1.     This action has been filed by Plaintiffs to address Defendants' selling and offering for sale of sunglasses or other products featuring counterfeits of Plaintiffs' Oakley trademarks (the "Counterfeit Oakley Products") and sunglasses featuring counterfeits of Plaintiffs' Ray-Ban trademarks (the "Counterfeit Ray-Ban Products") (collectively referred to herein as the "Counterfeit Products") through Defendants' website at lightinthebox.com.  Plaintiffs seek to address Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing low-quality Counterfeit Products over the Internet from China.  Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendant's actions and seek injunctive and monetary relief.

2.     Defendant is a repeat counterfeiter.  On July 1, 2014, Plaintiff Oakley filed the lawsuit 1:14-cv-04995, *Oakley, Inc. v. LightInTheBox Holding Co., Ltd.*, in the United States District Court for the Northern District of Illinois (the "Lawsuit") against Defendant for trademark infringement and counterfeiting.  Defendant continued to offer for sale and sell Counterfeit Products on multiple occasions despite receiving notices, and even while the Lawsuit was pending.

3.     On March 26, 2015, Plaintiff Oakley and Defendant Light In The Box Limited entered into a valid and binding settlement agreement (the "Agreement"), resolving the Lawsuit. A true and correct copy of the Agreement is attached to this Complaint as **Exhibit 1**. ▇▇▇▇▇

2

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

    4.     In April 2016, Plaintiffs again determined that Defendant was selling products bearing counterfeit versions of Plaintiffs' Oakley trademarks through the website at lightinthebox.com ████████████████████████████. In addition, Plaintiffs determined that Defendant was selling products bearing counterfeit versions of Plaintiffs' Ray-Ban trademarks through the website at lightinthebox.com.

## II. JURISDICTION AND VENUE

    5.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

    6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants by virtue of the following facts:

    a)    Pursuant to the terms of a settlement agreement (the "Agreement") executed by Plaintiff Oakley and Defendant Light In The Box Limited on March 26, 2015, ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████.

b) Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiffs' business within this Judicial District. Defendants have targeted sales from Illinois residents by operating fully interactive and commercial websites that offer to sell and have sold counterfeit Oakley and Ray-Ban products to residents of Illinois, including the website at lightinthebox.com. The Defendants are committing tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Plaintiffs substantial injury in the State of Illinois.

c) According to LightInTheBox Holding Co., Ltd.'s Form 20-F, Defendants are a global online retail company that delivers products directly to consumers around the world, including to consumers in the United States and Illinois.

d) Defendants derive substantial revenue from international commerce, including North America. In 2015, Defendants derived 28.5% of their net revenues from North America.

e) Defendants work with global couriers, such as DHL, UPS, and EMS for international deliveries to consumers in the United States, including Illinois.

f) Defendants maintain places of business in the United States, including at least an office in Seattle, Washington, with its address listed as 808 Howell Street, # 300, Seattle, Washington 98101, and a warehouse in Reno, Nevada in the United States, with its address listed at 4970 Joule Street, Reno, Nevada 89502.

g) Defendant LightInTheBox Holding Co., Ltd. has a registered agent in New York, with its address listed as 400 Madison Avenue, 4th Floor, New York, New York 10017.

4

h) Upon information and belief, millions of web users from the United States (including the State of Illinois) visit lightinthebox.com every day.

i) Approximately 15.3% of lightinthebox.com's visitors are from the United States.

j) On April 17, 2013, LightInTheBox Holding Co., Ltd. filed its Form F-1 with the U.S. Securities and Exchange Commission for an Initial Public Offering of its shares in the United States in June 2013, raising $79 million with American depositary receipts priced at $9.50.

## III. THE PARTIES

**Plaintiff Luxottica**

7.     Plaintiff Luxottica is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114.  Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, the RAY-BAN® family of marks.

8.     For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").

9.     Ray-Ban Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Ray-Ban Products are instantly recognizable as such.  In the United States and around the world, the Ray-Ban brand has come to symbolize high quality, and Ray-Ban Products are

among the most recognizable eyewear in the world. Ray-Ban Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut and high-end department stores, and through the official Ray-Ban.com website, which was launched in 1995 and began e-commerce sales in 2009.

10.     Luxottica and its predecessors began using the RAY-BAN trademarks in 1938 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the RAY-BAN Trademarks. Luxottica's use of the marks has also built substantial goodwill in and to the RAY-BAN Trademarks. The RAY-BAN Trademarks are famous marks and valuable assets of Luxottica. Ray-Ban Products typically include at least one of the registered RAY-BAN Trademarks.

11.     Several of the RAY-BAN Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 650,499 | *Ray-Ban* | For: Sunglasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |

6

| 1,093,658 |  | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
|---|---|---|

12.     The above U.S. registrations for the RAY-BAN Trademarks are valid, subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the RAY-BAN Trademarks are conclusive evidence of the validity of Luxottica's RAY-BAN Trademarks and of the registrations of the RAY-BAN Trademarks, of Luxottica's ownership of the RAY-BAN Trademarks, and of Luxottica's exclusive right to use the RAY-BAN Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies of the United States Registration Certificates for the above-listed RAY-BAN Trademarks are attached hereto as **Exhibit 2**.

13.     The RAY-BAN Trademarks are distinctive when applied to the Ray-Ban Products, signifying to the purchaser that the products come from Luxottica and are manufactured to Luxottica's quality standards. Whether Luxottica manufactures the products itself or contracts with others to do so, Luxottica has ensured that products bearing the RAY-BAN Trademarks are manufactured to the highest quality standards.

14.     The RAY-BAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Ray-Ban Products have enabled the Ray-Ban brand to achieve widespread recognition and fame and have made the RAY-BAN Trademarks some of the most well-known marks in the eyewear industry. The widespread fame, outstanding reputation, and

significant goodwill associated with the Ray-Ban brand have made the RAY-BAN Trademarks valuable assets of Luxottica.

15.     Luxottica has expended substantial time, money, and other resources in advertising and promoting the RAY-BAN Trademarks.  In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring the RAY-BAN Trademarks.  Ray-Ban Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the RAY-BAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica.  Ray-Ban Products have become among the most popular of their kind in the U.S. and the world.  The RAY-BAN Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the RAY-BAN Trademarks is of incalculable and inestimable value to Luxottica.

16.     Genuine Ray-Ban Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Ray-Ban brand.

17.     Since at least as early as 2009, genuine Ray-Ban Products have been promoted and sold at the official Ray-Ban.com website.  Sales of Ray-Ban Products via the Ray-Ban.com website are significant.  The Ray-Ban.com website features proprietary content, images and designs exclusive to the Ray-Ban brand.

**Plaintiff Oakley**

18.     Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

8

19.     Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica.

20.     Oakley is an internationally recognized manufacturer, distributor and retailer of eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products").  Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design.  Among the purchasing public, genuine Oakley Products are instantly recognizable as such.  In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world.

21.     Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official Oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

22.     Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products.  As a result of its long-standing use, Oakley owns common law trademark rights in Oakley Trademarks.  Oakley has also registered its trademarks with the United States Patent and Trademark Office.  Oakley Products typically include at least one of Oakley's registered trademarks.  Often several Oakley marks are displayed on a single Oakley Product.  Oakley has registered its trademarks with the United States Patent and Trademark Office.  Oakley uses its trademarks in connection with the marketing of its Oakley Products, including, but not limited to, the following marks which are collectively referred to as the "OAKLEY Trademarks."

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |
| 1,980,039 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, shorts, |

| | | |
|---|---|---|
| | | trousers, pants, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, swimwear, hats, visors, caps, gloves, belts, socks, sandals and shoes in class 25. |
| 1,990,262 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 1,984,501 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing and headwear, namely T-shirts, sweatshirts, jackets, hats, and caps in class 25. |

23.     The above registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065. The OAKLEY Trademarks have been used exclusively and continuously by Oakley since at least as early as 1984, and have never been abandoned. Attached hereto as **Exhibit 3** are true and correct copies of the United States Registration Certificates for the OAKLEY Trademarks included in the above table. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the OAKLEY Trademarks are conclusive evidence of the validity of Oakley's OAKLEY Trademarks and of the registrations of the OAKLEY Trademarks, of Oakley's ownership of the OAKLEY

Trademarks, and of Oakley's exclusive right to use the OAKLEY Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065.

24.     The OAKLEY Trademarks are exclusive to Oakley, and are displayed extensively on Oakley Products and in Oakley's marketing and promotional materials. Typically, at least one of the OAKLEY Trademarks are included on Oakley Products. Oakley Products have long been among the most popular eyewear in the world and have been extensively promoted and advertised at great expense. In fact, Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring the OAKLEY Trademarks. Oakley Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Oakley name and the OAKLEY Trademarks have become famous throughout the United States.

25.     The OAKLEY Trademarks are distinctive when applied to the Oakley Products, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards. Whether Oakley manufactures the products itself or licenses others to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OAKLEY Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the OAKLEY Trademarks is of incalculable and inestimable value to Oakley.

26.     Since at least as early as 1995, Oakley has operated a website where it promotes and sells genuine Oakley Products at Oakley.com. Sales of Oakley Products via the Oakley.com website represent a significant portion of Oakley's business. The Oakley.com website features proprietary content, images and designs exclusive to Oakley.

27.     Oakley's innovative marketing and product designs have enabled Oakley to achieve widespread recognition and fame and have made the OAKLEY Trademarks some of the most well-known marks in the eyewear and apparel industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the Oakley brand have made the OAKLEY Trademarks valuable assets of Oakley.

28.     Oakley has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OAKLEY Trademarks.  As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley.  Oakley is a multi-million dollar operation, and Oakley Products have become among the most popular of their kind in the world.

29.     The RAY-BAN Trademarks and the OAKLEY Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."

30.     The Ray-Ban Products and the Oakley Products are collectively referred to herein as "Plaintiffs' Products."

**The Defendants**

31.     Upon information and belief, Defendant LightInTheBox Holding Co., Ltd. ("LightInTheBox Holding") is a corporation organized and existing under the laws of the Cayman Islands, and headquartered in Beijing, China.

32.     Upon information and belief, Defendant Light In The Box Limited is a wholly owned subsidiary of LightInTheBox Holding, incorporated in Hong Kong that primarily engages in product sourcing, marketing and the operation of Defendants' website and the sale of products targeted towards consumers outside of China, including the United States.

13

33.     Upon information and belief, Defendant Lightinthebox Trading (Shenzhen) Co., Ltd. ("Lanting Jishi") is a wholly owned subsidiary of Light In The Box Limited incorporated in the People's Republic of China that primarily engages in providing supplier and warehouse management services for Light In The Box Limited.

34.     Upon information and belief, Defendant Light In The Box (Suzhou) Trading Co., Limited ("Lanting Suzhou") is a wholly owned subsidiary of Light In The Box Limited incorporated in the People's Republic of China.

35.     Upon information and belief, Defendant Light In The Box (Chengdu) Technology Co., Limited ("Lanting Chengdu") is a wholly owned subsidiary of Light In The Box Limited incorporated in the People's Republic of China.

36.     Upon information and belief, Defendant Lanting International Holding Limited ("Lanting International") is a wholly owned subsidiary of LightInTheBox Holding incorporated in Hong Kong as an intermediary holding company for its U.S. subsidiary, LITB, Inc.

37.     Upon information and belief, Defendant LITB, Inc. is a wholly owned subsidiary of Lanting International incorporated under the laws of the State of Delaware, USA that primarily engages in marketing and software development and technology support for the Defendants' websites.

38.     Upon information and belief, Defendant Lightinthebox International Logistic Co., Limited ("Lightinthebox Logistics") is a wholly owned subsidiary of Lanting International incorporated in Hong Kong that primarily engages in expansion of the Light In The Box warehouse and distribution network outside of China.

39.     Upon information and belief, Defendant Beijing Lanting Gaochuang Technologies Co., Ltd. ("Lanting Gaochuang") is a consolidated variable interest entity ("VIE")

14

of Defendants through a series of contractual arrangements incorporated in the People's Republic of China.

40.     Upon information and belief, Defendant Shenzhen Lanting Huitong Technologies Co., Ltd. ("Lanting Huitong") is a consolidated VIE of Defendants through a series of contractual arrangements incorporated in the People's Republic of China.

41.     Upon information and belief, Defendant Shanghai Ouku Network Technologies Co., Ltd. ("Shanghai Ouku") is a wholly owned subsidiary of Lanting Huitong incorporated in the People's Republic of China that primarily engages in the product sourcing, marketing, fulfillment, and the operation of Defendants' Websites.

42.     Defendants LightInTheBox Holding, Light In The Box Limited, Lanting Jishi, Lanting Suzhou, Lanting Chengdu, Lanting International, LITB, Inc., Lightinthebox Logistics, Lanting Gaochuang, Lanting Huitong, and Shanghai Ouku are collectively referred to herein as the "Defendants" or "LITB."

43.     Upon information and belief, a diagram illustrating LITB's corporate structure is shown below.



44.     Upon information and belief, Defendants are all alter egos of each other:

a)  The Defendants operate as a single unit comprising the subsidiaries and related companies operating the global retail websites lightinthebox.com and miniinthebox.com, sharing common ownership under LightInTheBox Holding. Defendants comprise a global online retail company that delivers products directly to consumers around the world, with major markets in Europe and North America, including the United States.

b)  According to LightInTheBox Holding's Form 20-F, the Annual and Transition Report of Foreign Private Issuers filed with the U.S. Securities and Exchange Commission on April 29, 2016, LightInTheBox defines the terms "we," "us," "our company," and "our" as including LightInTheBox Holding, its consolidated subsidiaries and its VIEs,

Lanting Huitong and Lanting Gaochuang, and Shanghai Ouku, the subsidiary of Lanting Huitong.

c) Upon information and belief, LightInTheBox Holding controls the other LITB Defendants, i.e., their marketing and operating policies.

d) Upon information and belief, the Defendant subsidiaries are financially dependent on their parent, LightInTheBox Holding.

e) Upon information and belief, the Defendants have a single reporting segment, as set forth in LightInTheBox Holding's Form 20-F.

f) Upon information and belief, LightInTheBox Holding receives "substantially all of the economic benefits of [its] VIEs. . . . [t]he financial results of [its] VIES are consolidated into our financial statements."

g) Upon information and belief, the Defendants store all sales and financial records, and contracts with third party suppliers on its corporate system, which is accessible to employees of all of the Defendants.

h) Upon information and belief, certain Defendants share employees, and employees from all of the Defendants perform various functions for Light In The Box Limited, including operating, supplier, technology support, and warehouse management services for lightinthebox.com and miniinthebox.com.

i) Upon information and belief, Defendants share a commonality of corporate officers and directors. For example, upon information and belief, Quji (Alan) Guo is the Chairman of LightInTheBox Holding, LITB, Inc., Lanting Jishi, Lanting Suzhou, Lanting Gaochuang, and Lanting Huitong. Upon information and belief, he is also a director of Light In The Box Limited, Lightinthebox Logistics, and Lanting

International.  Further, upon information and belief, Xin Wen, is a director of Light In The Box Limited, Lightinthebox Logistics, and Lanting International.  Additionally, upon information and belief, he is also a board member of Lanting Jishi, Lanting Suzhou, Lanting Gaochuang, and Lanting Huitong.

j) Upon information and belief, certain Defendants maintain common office space and addresses.  For example, the LightInThe Box Holding's 20-F Form states that "[w]e currently lease all properties for our operations. Our corporate headquarters are located in Beijing, China. We have established sourcing offices in Beijing, Shenzhen, Guangdong Province, Shanghai, Suzhou, Jiangsu Province, Guangzhou, Guangdong Province, Hangzhou, Zhejiang Province and Yiwu, Zhejiang Province. In addition, we have an overseas office in Seattle, Washington in the United States.  We maintain warehouses in Suzhou, Jiangsu Province and Shenzhen, Guangdong Province in China, and had established warehouses in Warsaw, Poland, Hong Kong and Reno, Nevada in the United States.  We have also established one photo studio in Beijing." Defendants refer to these properties as collectively belonging to LightInTheBox Holding, its consolidated subsidiaries and its VIEs, Lanting Huitong and Lanting Gaochuang, and Shanghai Ouku, the subsidiary of Lanting Huitong.   Upon information and belief, specifically, Defendants Light In The Box Limited, Lanting International, and Lightinthebox Logistics share a common office in Hong Kong.  Additionally, upon information and belief, Defendants Lanting Jishi and Lanting Huitong share a common office building.

45.    Upon information and belief, Defendants operate as a single unit and each of the Defendants is an agent of the other Defendants.

18

46.     Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of their fully interactive commercial website at lightinthebox.com. Defendants target the United States, including Illinois residents and have offered to sell, and have sold Counterfeit Products to consumers within the State of Illinois though the lightinthebox.com website.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

47.     Defendants operate a fully interactive commercial website located at lightinthebox.com.

48.     Defendants are engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products on their website at lightinthebox.com bearing logos and source-identifying indicia and design elements that are studied imitations and counterfeits of Plaintiffs' Trademarks (previously defined as the "Counterfeit Products").

49.     Plaintiffs' investigator visited the Defendants' website at lightinthebox.com and purchased Counterfeit Products.

50.     The purchased Counterfeit Products were shipped to the State of Illinois.

51.     The purchased Counterfeit Products were inspected by Plaintiffs' investigator who determined that each product was counterfeit and infringed Plaintiffs' Trademarks.

52.     A comparison of Plaintiffs' genuine Radar EV$^{TM}$ sunglasses with a Counterfeit Product offered for sale on lightinthebox.com exemplifies Defendants' counterfeiting of U.S. Trademark Registration No. 1,980,039 for a stylized "OAKLEY" wordmark owned by Oakley.



| Plaintiffs' Radar EV™ Sunglasses | LITB's Counterfeit Product |
|---|---|

53.     A comparison of Plaintiffs' genuine Radar EV™ sunglasses with a Counterfeit Product offered for sale on lightinthebox.com exemplifies Defendants' counterfeiting of U.S. Trademark Registration No. 1,984,501 for a stylized "O" owned by Oakley.



| Plaintiffs' Radar EV™ Sunglasses | LITB's Counterfeit Product |
|---|---|

54.     A comparison of Plaintiffs' genuine Sport Soft Vault Sunglass Case with a Counterfeit Product offered for sale on lightinthebox.com exemplifies Defendants' counterfeiting of U.S. Trademark Registration No. 1,984,501 for a stylized "O" owned by Oakley.



| | |
|---|---|
| **Plaintiffs' Sport Soft Vault Sunglass Case** | **LITB's Counterfeit Product** |

55.     A comparison of Plaintiffs' genuine Sport Soft Vault Sunglass Case with a Counterfeit Product offered for sale on lightinthebox.com exemplifies Defendants' counterfeiting of U.S. Trademark Registration No. 1,990,262 for a stylized "O" combined with a stylized "OAKLEY" wordmark owned by Oakley.



| | |
|---|---|
| **Plaintiffs' Prom M-Frame Strap Kit** | **LITB's Counterfeit Product** |

56.     A comparison of Plaintiffs' genuine Clubmaster® sunglasses with a Counterfeit Product offered for sale on lightinthebox.com exemplifies Defendants' counterfeiting of U.S. Trademark Registration No. 650,499 for the stylized "Ray-Ban" wordmark owned by Luxottica.



| Plaintiffs' Clubmaster® Sunglasses | LITB's Counterfeit Product |
|---|---|

57.     Upon information and belief, Defendants are well aware of the extraordinary fame and strength of Plaintiffs' Trademarks and the goodwill associated therewith.

58.     Defendants, without any authorization, license, or other permission from Plaintiffs, have used Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

59.     Defendants' use of counterfeits of Plaintiffs' Trademarks in the advertisement, distribution, offering for sale, and sale of Counterfeit Products was willful.

60.     Defendants' willful use of counterfeits of Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

61.     Plaintiffs hereby re-allege and incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' Products sold or marketed under Plaintiffs' Trademarks.

63.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeits of Plaintiffs' Trademarks without Plaintiffs' permission.

64.     Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks. Plaintiffs' United States Registrations for their respective Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

65.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their respective reputations and the goodwill of their well-known OAKLEY Trademarks and RAY-BAN Trademarks.

67.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

68.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67.

69.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

70.     By using Plaintiffs' Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

71.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

72.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their respective reputations and the goodwill of the Oakley and Ray-Ban brands.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

73.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 72.

74.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

75.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

76.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their respective reputations and goodwill associated therewith. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT IV**
**BREACH OF CONTRACT**
**(as to Defendant Light In The Box Limited)**

77.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 76.

78.     The Agreement entered into by Oakley and Defendant Light In The Box Limited created a contract between Plaintiff Oakley and Defendant Light In The Box Limited whereby

25

███████████████████████████████████████████████

█████████

79.     The Agreement is a valid and enforceable contract.

80.     Oakley performed all of its obligations under the Agreement.

81.     ████████████████████████████████████████████

████████████████████████████████████

82.     As a result of Defendant Light In The Box Limited's breach of the Agreement, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a.   using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

   b.   passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c.   committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.   further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

e.   otherwise competing unfairly with Plaintiffs in any manner; and

f.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)   That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 1, a through f, supra;

3)   That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)   That Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of $2,000,000.00 (two million dollars) for each and every use of Plaintiffs' Trademarks;

5)   That Defendant Light In The Box Limited be preliminarily and permanently enjoined from breaching the Agreement between Oakley and Defendant Light In The Box Limited;

6) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 18th day of May 2016.          Respectfully submitted,

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiffs*
*Luxottica Group S.p.A and Oakley, Inc.*