# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., <br><br>     Plaintiffs, <br>  v. <br><br>LIGHTINTHEBOX HOLDING CO., LTD., et al., <br><br>     Defendants. | Case No. 16-cv-05314 <br><br>**Judge Robert M. Dow, Jr.** <br><br>**Magistrate Judge Young B. Kim** |

## DEFENDANT LIGHT IN THE BOX LIMITED'S RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND .................................................................................................1

ARGUMENT ...........................................................................................................................3

I. Plaintiffs Are Not Entitled to a Preliminary Injunction........................................................3

    A. A Preliminary Injunction Is Extraordinary Relief That Requires a Clear Showing of Likely Irreparable Harm ........................................................................3

    B. Plaintiffs Do Not Clearly Demonstrate a Likelihood of Irreparable Harm .............4

    C. LITB Limited's Good Faith Response Also Precludes the Likelihood of Irreparable Harm........................................................................................................6

II. Even If Plaintiffs Were Entitled to the Extraordinary Relief They Seek, a Preliminary Injunction Cannot Issue on the Terms They Request............................................................7

CONCLUSION .....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Bernstein v. Medicis Pharm. Corp.*,
 No. 03 C 5256, 2004 WL 2092001 (N.D. Ill. Sept. 15, 2004)......................................................9

*E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*,
 414 F.3d 700 (7th Cir. 2005) .......................................................................................................4

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006)................................................................................................................ 4-6

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
 765 F.3d 205 (3d Cir. 2014).................................................................................................... 4-7

*Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*,
 430 F.3d 432 (7th Cir. 2005) .......................................................................................................3

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
 736 F.3d 1239 (9th Cir. 2013) ................................................................................................ 5-6

*Int'l Kennel Club of Chicago, Inc. v. Might Star, Inc.*,
 846 F.2d 1079 (7th Cir. 1988) ................................................................................................ 7-8

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
 735 F.3d 735 (7th Cir. 2013) .......................................................................................................6

*Mazurek v. Armstrong*,
 520 U.S. 968 (1997)....................................................................................................................3

*Milwaukee Police Ass'n v. Jones*,
 192 F.3d 742 (7th Cir. 1999) ...................................................................................................1, 6

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
 No. 14 C 4957, 2015 WL 3637740 (N.D. Ill. June 12, 2015) .....................................................5

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
 522 F.3d 1211 (11th Cir. 2008) ...................................................................................................5

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*,
 No. 14 C 7424, 2015 WL 3633987 (N.D. Ill. June 10, 2015) .....................................................5

*Patriot Homes, Inc. v. Forest River Hous., Inc.*,
 512 F.3d 412 (7th Cir. 2008) .......................................................................................................9

*PepsiCo, Inc. v. Redmond*,
 54 F.3d 1262 (7th Cir. 1995) .................................................................................................. 7-8

*PMC, Inc. v. Sherwin-Williams Co.*,
 151 F.3d 610 (7th Cir. 1998) ..............................................................................................9

*Quill Corp. v. NADA Sci. Ltd.*,
 No. 97 C 7461, 1998 WL 295502 (N.D. Ill. May 21, 1998) ........................................8

*Rodeo Collection, Ltd. v. W. Seventh*,
 812 F.2d 1215 (9th Cir. 1987) ..........................................................................................6

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
 53 F.3d 1073 (9th Cir. 1995) ..........................................................................................8

*Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*,
 704 F.3d 44 (1st Cir. 2013) ..............................................................................................5

*Totalplan Corp. of Am. v. Colborne*,
 14 F.3d 824 (2d Cir. 1994).................................................................................................9

*United States v. W. T. Grant Co.*,
 345 U.S. 629 (1953).............................................................................................................6

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
 645 F.3d 26 (1st Cir. 2011) ..............................................................................................5

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ..............................................................................................................4

## INTRODUCTION

Plaintiffs could have made a phone call to resolve this dispute. Instead, they filed 726 pages of documents including a complaint, four motions, two legal memos, and four separate declarations collectively attaching 25 exhibits. What is more, these scorched-earth litigation tactics came in response to just *three* allegedly infringing pairs of sunglasses among Light In The Box Limited's nearly 700,000 online product listings. Had Plaintiffs bothered to ask, they also would have learned that a grand total of *eight units* of those products had been shipped to U.S. customers, including the three units allegedly bought by their own investigator. Notwithstanding this volume of commerce, upon learning of this lawsuit, Light In The Box Limited acted with an abundance of caution and quickly removed the vast majority of all eyewear from its websites—over 10,000 products.

In light of these circumstances, Plaintiffs simply cannot demonstrate that they face the irreparable harm necessary to justify the extraordinary relief of a preliminary injunction. Indeed, Light In The Box Limited believes that "[t]his is one of those cases in which litigation seems to have replaced common sense" because "parties acting in good faith should be able to resolve the dispute without resorting to further legal action." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 744, 750 (7th Cir. 1999). Therefore, Light In The Box Limited respectfully requests that this Court deny Plaintiffs' Motion for Entry of a Preliminary Injunction.

## FACTUAL BACKGROUND

Defendant Light In The Box Limited ("LITB Limited") is a Hong Kong company that markets and sells over 687,800 products through the websites lightinthebox.com and miniinthebox.com. Declaration of Yin Hua ("Yin Decl.") ¶ 3. These products are sourced from over 6,800 active suppliers in China, and LITB Limited expends significant effort on compliance activities to avoid infringing the intellectual property rights of third parties, including by working

cooperatively with rights holders. *Id*. Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (collectively, "Plaintiffs") have filed this lawsuit and brought the instant motion for preliminary relief because they believe that three of the products listed on lightinthebox.com made unauthorized use of certain of their respective Ray-Ban and Oakley trademarks. *See* Complaint (Dkt. 1) ("Complaint" or "Compl.") ¶¶ 47-60; Memorandum in Support of Plaintiffs' Motion for Entry of Preliminary Injunction Against Defendant Light In The Box Limited (Dkt. 14) ("Mot.") at 8-13; Declaration of Kevin Read (Dkt. 16) ("Read Decl.") ¶¶ 3-11 and Exs. 1-3 (Dkt. 16-1, 16-2, 16-3).

Although LITB Limited does not have a prior litigation history with Luxottica or its Ray-Ban trademarks, Oakley previously brought a trademark action against LITB Limited in this Court in July 2014. Compl. ¶ 2; Mot. at 9. That dispute was fully and amicably resolved between Oakley and LITB Limited in a March 2015 settlement agreement. Compl. ¶ 3 and Ex. 1 (Dkt. 1-1 & 8); Mot. at 9. What is more, that dispute was resolved by precisely the same counsel that represent both Plaintiffs and LITB Limited in the instant matter. *See* Stipulation of Dismissal, *Oakley, Inc. v. LightInTheBox Holding Co., Ltd.*, No. 14-cv-04995 (N.D. Ill. Apr. 6, 2015) (Dkt. 62).

In April 2016, Plaintiffs became aware of three products on lightinthebox.com that allegedly infringed on their trademarks. Mot. at 9-12 (citing Read Decl. ¶¶ 3-11). Plaintiffs did not utilize their existing relationship with LITB Limited or its counsel to provide notice of this potential infringement, determine how serious a breach had occurred, or discuss ways to strengthen compliance efforts. Rather, Plaintiffs used counsels' contact information in support of a motion to direct service. *See* Plaintiffs' Memorandum in Support of its Motion for Entry of an Order Directing Service of Process Abroad Pursuant to Fed. R. Civ. P. 4(f)(3) (Dkt. 10) at 12.

For its part, however, LITB Limited took extensive prophylactic action within days of first learning of Plaintiffs' concerns. Specifically, by May 21, 2016, just three days after the Complaint was filed, LITB Limited had removed 10,470 eyewear products from both lightinthebox.com and miniinthebox.com, leaving only specialty eyewear like camera glasses. Yin Decl. ¶¶ 4-5. As part of that removal process, the three specific allegedly infringing products have been permanently stricken from LITB Limited's websites. *Id.* ¶ 5. Moreover, LITB Limited has also implemented extraordinarily strict procedures that require its Legal Department to approve the relisting of any removed eyewear product or the addition of any new eyewear product on lightinthebox.com or miniinthebox.com. *Id.* ¶ 6.

Furthermore, LITB Limited has also taken steps to investigate the scale of any potential infringement that may have occurred. Its business records reveal that the total volume of U.S. sales for all three of the allegedly infringing products is just eight units. *See* Declaration of Liu Shen ("Liu Decl.") ¶ 4 and Ex. A. Sales to Plaintiffs investigator, which were the only Illinois sales, account for three of those eight units. *Id.* Total sales revenue amounts to $255.02 for all eight units, or $132.61 excluding the investigator's purchases. *Id.*

## ARGUMENT

### I. Plaintiffs Are Not Entitled to a Preliminary Injunction

#### A. A Preliminary Injunction Is Extraordinary Relief That Requires a Clear Showing of Likely Irreparable Harm

"As the Supreme Court has observed, '[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Moreover, the Supreme Court's "frequently reiterated standard requires

3

plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction" because relying "only on a possibility of irreparable harm is inconsistent with [its] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original) (internal quotations and citations omitted). So too in the Seventh Circuit: "Our traditional approach to preliminary injunctions requires that the party seeking the injunction demonstrate, among other things, that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied. If the moving party cannot make this showing, a court's inquiry is over and the injunction must be denied." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (internal quotations and citations omitted). As set forth below, Plaintiffs fail to make any clear threshold showing of irreparable harm and thus this Court must deny their request for a preliminary injunction.

### B. Plaintiffs Do Not Clearly Demonstrate a Likelihood of Irreparable Harm

In support of the notion that they are likely to suffer irreparable harm absent a preliminary injunction, Plaintiffs tellingly fail to cite a single case decided within the last decade. In 2006, however, the Supreme Court rejected the notion that a permanent injunction must issue upon a showing of patent infringement, extending the logic from its copyright cases that "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a[n infringement] determination." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006). Since then, federal appellate courts across the country have further extended this logic to the trademark and preliminary injunction context. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014) ("no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act

4

cases"); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (rejecting the "presumption of irreparable harm based solely on a strong case of trademark infringement"); *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 54 (1st Cir. 2013) ("there is 'no principled reason why [*eBay*] should not apply' to a request for a preliminary injunction to halt trademark infringement" (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 33 (1st Cir. 2011))); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) ("a strong case can be made that *eBay*'s holding necessarily extends to the grant of preliminary injunctions under the Lanham Act").

Examining this precedent, the Northern District of Illinois has also expressly stated that it "sees no reason why the Seventh Circuit would reach a different conclusion in a Lanham Act case" and accordingly held that a trademark plaintiff "must show a likelihood of irreparable harm to be entitled to a preliminary injunction." *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, No. 14 C 7424, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015), *appeal dismissed* (July 7, 2015); *see also Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *23 (N.D. Ill. June 12, 2015), *appeal dismissed* (Sept. 8, 2015) ("declin[ing] to apply a blanket presumption" in light of defendant's argument "that *eBay* changed the law," and instead "look[ing] to the specific facts of th[e] case to determine whether [plaintiff] is likely to suffer irreparable harm from an ongoing Lanham Act violation").

Plaintiffs here make no such showing. The entirety of Plaintiffs' evidence in support of irreparable harm is a self-serving declaration from their own Director of Intellectual Property Protection. *See* Mot. at 21-22. Moreover, this declaration offers nothing more than generic assertions of consumer confusion and conclusory allegations regarding the resulting and incalculable damage to Plaintiffs' goodwill, brand confidence, reputations, exclusivity, and

5

future sales. *Id*. at 22; Stewart Declaration ¶¶ 31-35. In fact, the scale of Plaintiffs' alleged harm here is supremely calculable: five pairs of sunglasses sold to U.S. consumers not employed by their own investigator for slightly over $130. Liu Decl. ¶ 4 and Ex. A. Although this may have been enough before *eBay* and its progeny, "[g]one are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'" *Herb Reed Enters.*, 736 F.3d at 1250 (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)). Rather, even in the trademark context, Plaintiffs must—***but do not***—demonstrate on the specific facts of this case that the harm they will suffer is not merely trivial. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) (noting that irreparable harm in a trademark case is premised on "the difficulty of quantifying the likely effect on a brand of a *nontrivial* period of consumer confusion" (emphasis added)).

  **C.** **LITB Limited's Good Faith Response Also Precludes the Likelihood of Irreparable Harm**

The Supreme Court has long held that a defendant's voluntary cessation of an alleged harm "is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). In such circumstances, "[t]o be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Id*. at 633. Put slightly differently: "[G]ood faith intentions . . . are relevant in determining whether injunctive relief is appropriate. Cessation of the allegedly illegal conduct . . . may affect the ability to obtain injunctive relief, as by impacting the ability to show substantial and irreparable injury." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 748 (7th Cir. 1999) (citing *W. T. Grant Co.*, 345 U.S. at 632-33). *See also Ferring*, 765 F.3d at 219

6

(finding that in "a determination as to whether a plaintiff has demonstrated irreparable harm[,] . . . [w]hether a defendant's conduct has ceased is certainly a relevant consideration").

In *Ferring*, the plaintiff sought a preliminary injunction based on a Lanham Act claim alleging false and misleading statements during a webcast presentation given by the defendant's paid consultant. *Id*. at 207-09. The district court denied the injunction on irreparable harm grounds and the appellate court affirmed. *Id*. at 218. In particular, the Third Circuit pointed to the consultant's certification that he would not make such statements in the future and his actual removal of the statements from a subsequent webcast, stressing that on this record it saw "no evidence that the allegedly false statements [were] still available to consumers." *Id*.

Here, LITB Limited has made a strong showing of good faith by quickly and voluntarily removing all non-specialty eyewear products from its websites—over 10,000 individual product listings. Yin Decl. ¶¶ 4-5. Moreover, despite the extremely limited scale of any potential past violations, by instituting strict procedures to both permanently bar the specific allegedly infringing products and impose heightened screening on all other eyewear products, *id*. ¶¶ 5-6, LITB Limited has clearly endeavored to make its new preventative measures truly effective. As in *Ferring*, the allegedly offending conduct has been demonstrably made unavailable to consumers, and thus the request for a preliminary injunction must be denied for lack of irreparable harm.

## II. Even If Plaintiffs Were Entitled to the Extraordinary Relief They Seek, a Preliminary Injunction Cannot Issue on the Terms They Request

Even if Plaintiffs were entitled to a preliminary injunction, however, its scope must be much narrower than that requested. Indeed, "a court abuses its discretion where the scope of injunctive relief 'exceed[s] the extent of the plaintiff's protectible [sic] rights.'"

7

*PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1094 (7th Cir. 1988)). Consistent with their heavy-handed litigation approach, Plaintiffs seek an extremely broad preliminary injunction that, *inter alia*, restrains LITB Limited from:

- "using Plaintiffs' Trademarks . . . in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is . . . not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks," Compl. at 26;

- "committing any acts calculated to cause consumers to believe that Defendants' products are . . . connected with Plaintiffs," *id.* at 27; and

- "disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks," *id*.

This requested relief far exceeds Plaintiffs' protectable rights.

First, Plaintiffs' proposed preliminary injunction improperly restricts conduct protected by the first sale doctrine. *See Quill Corp. v. NADA Sci. Ltd.*, No. 97 C 7461, 1998 WL 295502, at *2 (N.D. Ill. May 21, 1998) ("[T]he right of the producer to control distribution of its trademarked product does not extend beyond the first sale of the product. 'Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition.'" (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995)). This Court should not allow Plaintiffs to circumvent longstanding trademark doctrine and impermissibly control downstream distribution of legitimate trademarked products after their first sale.

8

Second, Plaintiffs' requested relief improperly includes the wholly foreign conduct of a foreign defendant. *See Bernstein v. Medicis Pharm. Corp.*, No. 03 C 5256, 2004 WL 2092001, at *2 (N.D. Ill. Sept. 15, 2004) ("In determining whether the Lanham Act reaches a defendant's foreign business activities, courts in this district have adhered to the test that originated with the Supreme Court's decision in *Steele v. Bulova Watch Co.*, and was more fully developed in the Second Circuit case of *Vanity Fair Mills, Inc. v. T. Eaton Co.*" (internal citations omitted)); *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 831 (2d Cir. 1994) ("Two of the three conditions necessary to bring appellees' conduct within the Lanham Act, United States citizenship and a substantial effect on United states commerce, have thus not been established by [plaintiff]. As was the case in *Vanity Fair*, the absence of two of the three *Bulova* factors in this case is fatal to an argument that the conduct is governed by the Lanham Act."). Accordingly, the Court must also reject Plaintiffs' attempt to secure an injunction that is not properly limited to U.S. conduct.

Finally, Plaintiffs improperly seek to restrain LITB Limited, under pain of contempt, from ***any*** activity involving ***any*** product that bears ***any*** of Plaintiffs' trademarks—without regard to the products and trademarks actually at issue in this suit. *See Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 414-15 (7th Cir. 2008) ("[A]n injunction must 'be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt.'" (quoting *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998))). LITB Limited cannot be fairly expected to be on notice of every single one of Plaintiffs' present and future trademarks, nor to anticipate the presence of such

9

trademarks on products wholly unrelated to the sunglasses at issue here. Thus, on this basis as well, the Court must deny such sweeping relief.

## CONCLUSION

For all of the foregoing reasons, LITB Limited respectfully requests that the Court deny Plaintiffs' Motion for Entry of a Preliminary Injunction.

DATED: June 16, 2016 			Respectfully submitted,

By /s/ Harrison J. Frahn IV
Harrison J. Frahn IV *(pro hac vice pending)*
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
hfrahn@stblaw.com

*Counsel for Defendant
Light In The Box Limited*

10