**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. and | ) | |
| OAKLEY, INC., | ) | Case No. 16-cv-05314 |
| | ) | |
| Plaintiffs, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| v. | ) | |
| | ) | |
| LIGHT IN THE BOX LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs Luxottica Group S.p.A.'s and Oakley, Inc.'s

Motion for a Preliminary Injunction against Defendant Light In The Box Limited, [12].  Also

before the Court are Defendant's two motions to strike, [92], [102].  For the following reasons,

the Court grants Plaintiff's motion [12] and denies Defendant's motions, [92], [102].  The Court

will set a status hearing after Magistrate Judge Finnegan has resolved Plaintiff's pending motion

to compel.  See [107], [113], [117].

## I.    Background[1]

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley")

(collectively, "Plaintiffs") filed this action against Defendant Light in the Box Limited

("Defendant") to address Defendant's alleged selling and offering for sale of sunglasses featuring

counterfeits of Plaintiffs' registered Ray-Ban and Oakley trademarks.

Luxottica produces, manufactures, and distributes luxury and sports eyewear under

federally registered trademarks, including but not limited to the Ray-Ban family of marks.

---

[1] The information in this section is drawn from Plaintiffs' Amended Complaint [71], the briefs and other materials that the parties submitted in support of and opposition to Plaintiff's motion for a preliminary injunction, and the stipulations and testimony elicited at the October 12, 2016 hearing.

Luxottica and its predecessors began using the Ray-Ban trademarks in 1938 and since then have continuously sold eyewear under the Ray-Ban and other trademarks. Ray-Ban products are sold and distributed to consumers through authorized retailers across the United States and through the Ray-Ban.com website, which launched in 1995 and began e-commerce sales in 2009. According to Plaintiff's amended complaint, the Ray-Ban trademarks enjoy incontestable status under 15 U.S.C. § 1065 and are "famous" marks as that term is used in 15 U.S.C. § 1125(c)(1).

Oakley is an indirect, wholly-owned subsidiary of Luxottica. Oakley manufactures, distributes, and sells eyewear, apparel, footwear, outerwear, jackets, accessories, and other merchandise. Oakley owns federally-registered trademarks and icon logos, which it prominently displays on its products. Its products are distributed and sold to consumers in the United States through authorized retailers, Oakley O Stores, and the official Oakley.com website, which was launched in 1995.

Defendant is a Hong Kong corporation that primarily engages in sourcing, marketing, and selling products to consumers outside of China, including in the United States, on its website lightinthebox.com. According to the amended complaint, lightinthebox.com sells and offers for sale products that bear logos and source-identifying indicia and design elements which are studied imitations and counterfeits of Plaintiffs' trademarks. On July 1, 2014, Oakley filed a lawsuit against Defendant in this district (Case No. 14-cv-4995) alleging claims for trademark infringement and counterfeiting. Oakley and Defendant entered into an agreement on March 26, 2015 to settle that lawsuit (the "Settlement Agreement").

In the instant lawsuit, Plaintiffs allege that in April 2016 they again determined that Defendant was selling products bearing counterfeit versions of the Oakley and Ray-Ban trademarks on lightinthebox.com. In the governing complaint, Plaintiffs allege that their

investigator visited lightinthebox.com and purchased counterfeit products, which were shipped to Illinois. The investigator inspected the products and determined that they were counterfeit and infringed Plaintiffs' trademarks. In particular, Plaintiffs allege that Defendant sold counterfeits of (1) Oakley's Radar EV[TM] sunglasses (Trademark Registration No. 1,980,039, stylized "OAKLEY" wordmark; Trademark Registration No. 1,984,501, stylized Oakley "O"; Trademark Registration No. 1,990,262, stylized "O" combined with stylized "OAKLEY" wordmark); (2) Oakley's Holbrook[TM] sunglasses (Trademark Registration No. 3,151,994 for stylized "O"); and (3) Luxottica's Ray-Ban Clubmaster® sunglasses (Trademark Registration No. 650,499, stylized "Ray-Ban" wordmark). Plaintiffs allege that Defendant did not have permission to use their trademarks, that Defendant's use of counterfeits of their trademarks was willful, and that Defendant's willful use of their trademarks is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs. Plaintiffs bring claims against Defendant for: trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114 (Count I); false designation of origin in violation of 15 U.S.C. § 1125(a) (Count II); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILSC § 510 *et seq.* (Count III); and breach of the March 26, 2015 Settlement Agreement (Count IV).

On May 18, 2016, Plaintiffs filed a motion for a preliminary injunction [12]. The parties briefed the motion, see [14], [31], [42], and Defendant filed a motion for permission to take prehearing discovery, see [52]. On August 24, 2016, while the motions were pending, Plaintiffs filed a motion for expedited entry of a preliminary injunction or alternatively a temporary restraining order ("TRO"). See [64]; see also [65], [73]. On August 25, 2015, the Court granted Defendant's motion for prehearing discovery. See [70]. On September 6, 2016, the Court

entered an order [79] granting Plaintiff's motion for a TRO.   The TRO expires on October 19, 2016, per the agreement of the parties.  See [101].

After the TRO was granted, the parties engaged in discovery and submitted supplemental briefs in support of their positions.  See [87], [91].  Defendant also filed two motions to strike certain declarations submitted by Plaintiffs, see [92], [102], and Plaintiffs filed a motion to compel Defendant to respond to certain discovery requests, see [107].[2]

On October 12, 2016, the Court held a hearing and allowed the parties to present argument, witness testimony, and evidence supporting their positions on the preliminary injunction and motions to strike.  At the outset of the hearing, the parties entered into certain stipulations that were read into the record and obviated the need to call all but one of the four witnesses whom Plaintiffs had identified on their witness list.  See [112].  The stipulations, which were made for purpose of the preliminary injunction motion only and expire as of December 31, 2016 in any event, state as follows:

1. Defendant offered for sale and sold Product Identification No. 4832038, described as "5 Lens Glasses Outdoor Sports Bike Sunglasses Goggles Set" on its website at lightinthebox.com.  Product ID 4832038 bears marks identical with or substantially indistinguishable from at least one of Plaintiffs' trademarks.  Product ID 4832038 was not authorized, licensed, or manufactured by Plaintiffs.

2. Defendant offered for sale and sold Product Identification No. 1438710, described as "RADAR Circular Vintage Transparent Frame Sunglass" on its website at lightinthebox.com.  Product ID 1438710 bears marks identical with or substantially indistinguishable from at least one of Plaintiffs' trademarks.  Product ID 1438710 was not authorized, licensed, or manufactured by Plaintiffs.

3. Defendant offered for sale and sold Product Identification No. 1438670, described as "RADAR Circular Vintage Black Frame Sunglass" on its website at lightinthebox.com.  Product ID 1438670 bears marks identical with or substantially indistinguishable from at least one of Plaintiffs' trademarks.  Product ID 1438670 was not authorized, licensed, or manufactured by Plaintiffs.

---

[2] The motion to compel has been referred to Magistrate Judge Finnegan for ruling, along with all discovery supervision and a settlement conference if requested by the parties.  See [113], [117].

4. Defendant offered for sale and sold Product Identification No. 4610495, described as "Sunglasses Unisex's Lightweight / Sports / Fashion Wear White Sunglasses / Sports / Driving Full Rim" on its website at lightinthebox.com. Product ID 4610495 bears marks identical with or substantially indistinguishable from at least one of Plaintiffs' trademarks. Product ID 4610495 was not authorized, licensed, or manufactured by Plaintiffs.

The sole live witness, John Stewart ("Stewart"), testified on direct and cross-examination about the matters set forth in his declarations, including the harm that he believes has resulted from Defendant's selling of counterfeit goods and his inspection of certain eyewear products purchased from lightinthebox.com. Most significantly for present purposes, Stewart offered credible testimony as to the source and counterfeit nature of the four products described in the stipulations.

## II. Defendant's Motions to Strike [92], [102]

In its first motion to strike, Defendant seeks to exclude portions of the declarations of Stewart, Kevin Read ("Read"), and Robert Holmes ("Holmes"). Defendant objects to Stewart's declaration to the extent that it opines on the irreparable harm that Plaintiffs will suffer if a preliminary injunction is not issued. Defendant argues that this portion of Stewart's declaration was drafted by counsel, is not specific to the case, and constitutes impermissible legal opinion. The Court denies Defendant's motion to strike this portion of Stewart's declaration. To the extent that Stewart has provided legal opinion that goes beyond what is authorized by Federal Rule of Evidence 701—an issue that Defendant fails to address in any detail or with citation to proper legal authority—the Court finds it unnecessary to strike the declaration because it has not relied on Stewart's opinion as to the ultimate issue of whether Plaintiffs would suffer irreparable harm without an injunction. The Court is "able to sift through the evidence and to consider each piece under the applicable federal rules" without going to the additional work of editing and striking out portions of the parties' declarations. *Martin v. Ft. Wayne Police Dep't*, 2011 WL

781383, at *5 (N.D. Ind. Feb. 28, 2011); see also *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (recognizing the "general rule that motions to strike are disfavored" because they "potentially serve only to delay," except where they "remove unnecessary clutter from the case"). And while the Court must disregard witness testimony that "stat[es] a legal conclusion," it may consider testimony that "provid[es] concrete information against which to measure abstract legal concepts." *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007); see also *Ashley v. Schneider National Carriers, Inc.*, 2016 WL 3125056, at *8 (N.D. Ill. June 3, 2016).

Defendant also objects to Stewart, Read, and Holmes' declarations to the extent that they discuss photographs of Defendant's allegedly infringing products, on the basis that the photographs were supplied by counsel, the declarants did not know the circumstances under which the photographs were taken, and the declarations were prepared by counsel. The Court denies Defendant's motion to strike on this ground, as well. There is nothing unusual or improper about an attorney drafting a witness's declaration, so long as the witness reviews the declaration, agrees with its contents, and has a basis for his or her agreement, and Defendant has cited no legal authority that suggests otherwise. Stewart, Read, and Holmes were capable of reviewing photographs obtained by their counsel and assessing whether the sunglasses shown in the photographs bore logos or design elements that appear to be studied imitations of Oakley and Ray-Ban marks and design elements. More generally, Defendant has failed to identify any problems with the declarations that call into serious question the fact that Plaintiffs' representatives purchased sunglasses from Defendant's website, lightinthebox.com, took photographs of the sunglasses, and compared the photographs and/or sunglasses with Plaintiffs' own products to assess their similarity. In any event, as stated at the hearing, for purposes of

ruling on the instant motion for a preliminary injunction, the Court will consider only the eyewear products referenced in the parties' stipulations, all of which were subject to discovery and cross-examination at the hearing and physically entered into evidence for the Court's own examination. For these reasons, Defendant's first motion to strike [92] is denied.

In its second motion to strike [102], Defendant argues that the Court should strike in their entirety the declarations, [95], [96], [97], that Plaintiffs filed in support of their supplemental memorandum in support of their motion for entry of a preliminary injunction, [91]. Defendant asserts that the declarations are improper because they constitute evidence raised for the first time in a reply brief. The Court denies Defendant's motion [102]. The Court specifically authorized the parties to file supplemental briefs in support of or in opposition to the preliminary injunction by September 22, 2016, with the briefs to be filed concurrently. See [70]. It is therefore inaccurate to characterize Plaintiffs' brief as a "reply." Moreover, these briefs gave the parties an opportunity to address for the Court's benefit how the facts learned in discovery requested by Defendant might affect the matters at issue in the motion for preliminary injunction. Finally, Defendant had ample time to review and respond to Plaintiffs' brief and supporting declarations prior to and at the October 12 hearing.

## III.    Plaintiff's Motion for Preliminary Injunction

### A.    Legal Standard

The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. See *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.,* 549 F.3d 1079, 1085–86 (7th Cir. 2008). "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy

at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661-62 (7th Cir. 2015). If the movement makes the required threshold showing, then the court moves on to the second stage and considers: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties," *i.e.* the public interest. *Id.* at 662. The Court balances the potential harms on a sliding scale against the movant's likelihood of success. The greater the movant's likelihood of success, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).[3]

### B. Analysis

For the reasons explained in this section, the Court concludes that the requirements for entry of a preliminary injunction [79] have been satisfied. However, as explained at this end of this section, the Court will narrow the TRO it previously granted so that the preliminary injunction covers eyewear only.

### 1. Irreparable Harm and No Adequate Remedy at Law

For many years, the Seventh Circuit applied a presumption that when a plaintiff's trademark is being infringed, the plaintiff will suffer irreparable harm and have no adequate remedy at law without an injunction. *See, e.g.*, *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). However, this presumption was called into doubt by the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), a patent infringement case. In *eBay*, the Supreme Court "rejected invitations to replace traditional equitable

---

[3] This analysis is the same one that is used, and was previously used by the Court in this case, to determine if a TRO is warranted. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013).

considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id*. at 392-93.

While the Seventh Circuit has applied *eBay* in a copyright case, see *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 755 (7th Cir. 2012), it has not yet addressed whether *eBay* applies to trademark infringement cases brought under the Lanham Act ("Act"). See *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015). Some district courts in this Circuit have assumed that the Seventh Circuit would join some of its sister circuits in extending *eBay* to trademark cases, and thus have declined to apply a blanket presumption of irreparable harm and instead have required a showing on the specific facts of the case. See *id.*; *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *23 (N.D. Ill. June 12, 2015); see also *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.,* 704 F.3d 44, 54 (1st Cir. 2013); *Ferrlng Pharm., Inc. v. Watson Pharm., Inc.,* 765 F.3d 205, 216 (3d Cir. 2014); *Audi AG v. D'Amato,* 469 F.3d 534, 550 (6th Cir. 2006); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,* 736 F.3d 1239, 1248-49 (9th Cir. 2013); cf. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1228-29 (11th Cir. 2008) (recognizing the question but declining to decide whether *eBay* applied in Lanham Act case).

As at the TRO stage, this Court need not takes sides in the dispute at this time, because assuming that a case-by-case showing of irreparable harm or no adequate remedy at law is required, it has been sufficiently made on the basis of the record compiled to date. Irreparable harm is harm that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). Post-*eBay*, the Seventh Circuit has continued to recognize that "irreparable harm is

especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)." *Id.* at 741.

At the October 12, 2016 hearing, Defendant argued that the Court should be guided by *National Financial Partners*, in which Judge Kennelly granted the plaintiff (a financial services company) a preliminary injunction barring the defendant (a payroll administration company) from using its logo. Judge Kennelly was persuaded that two factors weighed in favor of a finding that the plaintiff would suffer irreparable harm without an injunction. Both factors weigh in favor of Plaintiffs in this case, as well. First, Judge Kennelly explained that the plaintiff spent significant sums of money advertising, marketing, and promoting its logo, which was "a strong indication that the mark has significant economic value as a source identifier" and that "[a]ny infringement that impedes that identifying function will cause significant harm." *Nat'l Fin. Partners*, 2015 WL 3633987, at *12. Similarly, in this case, Plaintiffs allege (and Defendant does not dispute) that Luxottica spends millions of dollars annually to advertise, promote, and market its Ray-Ban and Oakley trademarks. See [71] at 6, 10-11; see also 10/12/16 hearing transcript at 21 (Stewart direct testimony). This indicates that Plaintiffs' marks have significant economic value as source identifiers, which would be undermined by Defendant's sale of allegedly counterfeit sunglasses.

Second, Judge Kennelly recognized that the defendant was selling a similar type of product as the plaintiff, using marks that were the same or substantially similar to the plaintiff's mark, and concluded that this also weighed in favor of a finding of irreparable harm. *Nat'l Fin. Partners*, 2015 WL 3633987, at *12. The same is true here. The Court has examined the sunglasses that Plaintiffs allegedly purchased from lightinthebox.com, which were received in

evidence at the October 12 hearing. See Plaintiff's Exhibits 2, 5, 8, and 19. Except for one of the two pairs of sunglasses submitted as Plaintiff's Exhibit 19, all of the sunglasses contain an Oakley or Ray-Ban marking that is identical to or substantially indistinguishable from Plaintiffs' registered trademarks. Defendant's sale of allegedly counterfeit goods poses an obvious risk to the goodwill that Plaintiffs have built up over the decades, which constitutes irreparable harm. See, e.g., *Bulgari, S.P.A. v. Zou Xiaohong*, 2015 WL 6083202, at *3 (N.D. Ill. Oct. 15, 2015) (holding that Defendant's "sale of counterfeit BVLGARI branded products [online] poses unmistakable peril to Bulgari's goodwill, and therefore constitutes an irreparable injury that the available legal remedies are inadequate to compensate for").

The Seventh Circuit recognized as far back as the 1980s that, as is "obvious to even a casual consumer, the sale of counterfeit merchandise has become endemic—perhaps pandemic." *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989). The advent of global Internet sales has only exacerbated the potential harm to trademark holders and the difficulty they face in policing the sale of counterfeit goods. Moreover, common sense confirms that Defendant's sale of goods that look nearly identical to Plaintiffs' creates a risk of irreparable harm by devaluing Plaintiffs' brands. One need only have walked through the commercial and tourist districts of any major city—New York, Paris, even Chicago—to have observed significant quantities of sunglasses offered for sale, some purporting to be name brands (like those owned by Plaintiffs) at vastly discounted prices to recognize the potential for damage to a trademark holder by the offering for sale of counterfeit sunglasses.

Defendant argues that Plaintiffs have failed to demonstrate irreparable harm because the volume of sales of infringing sunglasses is so trivial as to negate any suggestion of irreparable harm. The Court is not persuaded by Defendant's argument. First, the case that Defendant cites,

*Kraft Foods*, used the word "trivial" in the context of affirming the entry of a preliminary injunction and explaining that "irreparable harm is especially likely in a trademark case because of the difficulty in quantifying the likely effect on a brand of a nontrivial period of consumer confusion." 735 F.3d at 741. The court of appeals then added parenthetically that "the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial." *Id.* To the extent that the quoted discussion in *Kraft Foods* supports either side here, it is Plaintiffs, not Defendant.

In addition, discovery on this issue has not been completed. Although Plaintiffs have sought additional discovery—albeit not on an expedited basis—on all listings that Defendant has posted offering for sale products that bear Plaintiffs' marks or substantially indistinguishable marks (see [108] at 1), Defendant has yet to respond to Plaintiffs' request. Plaintiffs also have sought (but not received) documents concerning Defendant's due diligence processes governing the products it lists for sale on lightinthebox.com. See [108] at 2.[4]

This ongoing discovery relates to the "denominator" problem that the Court referenced at the motion hearing. As the Court explained, the record shows a finite number of infringing products that Plaintiffs' investigators have located. It does not indicate the total number of products on Defendant's webpage that Plaintiffs' investigators have examined, although the discovery requests suggest that only a small fraction of the whole has been subject to assessment. Defendant argued at the hearing that the Court ought to consider the entirety of Defendant's eye wear offerings to be the relevant denominator, and that on that view, the total of 4 infringing products among approximately 10,000 offerings amounts to a trivial showing of harm. Although Defendant's view might prove persuasive after full development of the record, at this stage of the

---

[4] As noted above, these discovery requests are currently the topic of a motion to compel, [108], which has been referred to Magistrate Judge Finnegan for resolution, see [113], [117].

case (and on the current state of the record) the appropriate denominator is much smaller given that Defendant is in possession of the critical information and has yet to produce it. To be sure, the Court stressed at last week's hearing, should the discovery process reveal that the full evidentiary picture differs materially from the facts presented at this preliminary stage of the case, either party remains free to file a motion asking that the injunction be modified or vacated in light of changed circumstances. See, *e.g.*, *System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) (holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007) ("any injunction issued by a court of equity is itself subject to later modification," as "[c]ourts grant injunctive relief with the understanding that there will be an 'opportunity for modifying or vacating [the] injunction when its continuance is no longer warranted'" (quoting *Milk Wagon Drivers Union v. Meadowmoor Dairies*, 312 U.S. 287, 298 (1941)); cf. *Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015) ("a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest").[5]

Finally, the history of this lawsuit raises serious questions about Defendant's ability to police its own website to ensure that it is not selling counterfeit goods. In August, Plaintiffs discovered that Defendant was again selling one of the sunglasses styles that Defendant had

---

[5] Indeed, there is substantial authority for the proposition that a district court may dissolve or modify a preliminary injunction order based on the presentation of new facts even after an appeal has been taken. See, *e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (affirming district court's modification of preliminary injunction order on appeal based on consideration of new facts); see also Fed. R. Civ. P. 62(c) ("When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."); Fed. R. Civ. P. 62.1 (indicative ruling procedure that could be employed by parties or the court of appeals in the event of jurisdictional uncertainty between district court and court of appeals).

agreed to remove from lightinthebox.com in May.  Defendant blames this on one of its suppliers, who relisted the product in July with a photograph that obscured the alleged infringing trademark, and asserts that it removed the product from its website and took steps to terminate its relationship with the supplier as soon as it was alerted to the issue.  While Defendant may act quickly to remove offending products once a trademark holder puts Defendant on notice, this tells the Court nothing about whether Defendant's policies and practices are sufficient to reduce the potential harm to Plaintiffs to a trivial level.

For the foregoing reasons, the Court concludes that Plaintiff has made an adequate showing that it will suffer irreparable harm prior to the final resolution of this case and has no adequate remedy at law if a preliminary injunction is not issued.

### 2.       Reasonable Likelihood of Success on the Merits

"At the preliminary injunction stage, the plaintiff must show that 'it has a better than negligible chance of succeeding on the merits so that injunctive relief would be justified.'" *Personeta, Inc. v. Persona Software, Inc.*, 418 F. Supp. 2d 1013, 1016 (N.D. Ill. 2005) (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)).  Plaintiffs have met this burden, establishing a likelihood of success on their claims for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA").

In order to prevail on a claim of trademark infringement and counterfeiting or a claim of false designation of origin under the Lanham Act, a plaintiff must show that (1) its marks are protected under the Act; (2) the defendant is not authorized to use the marks; and (3) the defendant's use of the challenged mark is likely to cause confusion among consumers.  *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 880 (N.D. Ill. 2013) (citing 15

14

U.S.C. §§ 1114(1)(a) and 1125(a)(1)(A)); see also *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997); *Bulgari, S.p.A. v. Partnerships and Unincorporated Associations Identified On Sched. "A"*, 2014 WL 3749132, at *3 (N.D. Ill. July 18, 2014). Where, as here, a plaintiff's factual allegations under the UDTPA also form the basis of its claims under the Act, "the legal inquiry is the same under both statues" and the UDTPA claim is "to be resolved according to the principles set forth under the . . . Act." *Desmond*, 921 F. Supp. 2d at 854; see also *Bulgari*, 2014 WL 3749132, at *3-4.

Plaintiffs have established all three elements. First, Plaintiffs have demonstrated that their Oakley and Ray-Ban marks are protected under the Act and the UDTPA. Plaintiffs own U.S. registrations for the marks Ray-Ban, Oakley, and Oakley Icon logos. Registration of these trademarks creates a rebuttable presumption that the marks are valid. *Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). In addition, Plaintiffs' marks are displayed extensively on their products and marketing and promotional materials and have been used by Plaintiffs for many years. Defendant has not rebutted the presumption that Plaintiffs' registered marks are protected by the Act.

Second, it is undisputed that Defendant is not authorized to use Plaintiffs' marks.

Third, Plaintiffs have made a sufficient showing that Defendant's sale of goods that use the Oakley and Ray-Ban marks and logos (or substantially indistinguishable marks and logos) is likely to cause confusion. See *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). Defendant is allegedly selling counterfeit versions of sunglasses that look very similar to Plaintiffs' sunglasses and that use counterfeit marks identical to (or substantially indistinguishable from) Plaintiffs' trademarks. The Seventh Circuit has recognized that where "'one produces counterfeit goods in an apparent attempt to capitalize upon the

popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.'" *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 147 (4th Cir. 1987)).

At the October 12 hearing, Defendant's counsel criticized Plaintiffs for offering no evidence that any consumers were actually confused by Defendant's sale of allegedly counterfeit goods. However, this argument overlooks the Seventh Circuit's presumption that the use of counterfeit marks is likely to cause consumer confusion, *Microsoft*, 249 F. App'x at 479, and the fact that Seventh Circuit case law does not require a showing of actual confusion. "This circuit uses the following seven factors to determine the likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive," but the three most important factors are "the similarity of the marks, the intent of the defendant, and evidence of actual confusion." *Id,*

In this case, factors 1, 2, 3, and 5 all weigh strongly in favor of a finding of likelihood of confusion. The sunglasses that Plaintiffs purchased on Defendant's website contain marks that are identical to or substantially indistinguishable from Plaintiffs' marks, and Defendant sells the same type of products (sunglasses) as Plaintiffs, in designs that are very similar to Plaintiffs' designs. In addition, Plaintiffs allege (and Defendant does not deny) that their marks are famous and enjoy a high level of customer recognition. See [71] at 4-7 (amended complaint); 10/12/16 hearing transcript at 21-22 (Stewart direct testimony).

For all of these reasons, the Court concludes that Plaintiffs have demonstrated that they have a reasonable likelihood of success on the merits of their claims.

### 3. Balancing of Irreparable Harm to the Parties

For the reasons discussed above, Plaintiffs do not have an adequate remedy at law and will suffer an irreparable injury should Defendant's actions not be enjoined. Defendant's unauthorized use of the Oakley and Ray-Ban marks has caused irreparable harm to Plaintiffs and will continue to do so. The confusion caused by knock-off products in the stream of commerce damages the value of the brand and cannot be compensated by money alone. Plaintiffs have set forth in detail the enormous expenditure and effort over the course of many decades that has gone into the creation and maintenance of their marks. As the Seventh Circuit stressed in *Kraft Foods*, 735 F.3d at 741, it is difficult to quantify the effect of consumer confusion on a brand— and that is all the more so on the limited record available at the preliminary injunction stage.

To be sure, as Defendant has argued in its briefs and before the Court, the Court does not doubt that Defendant has made good faith efforts to police its own offerings for sale and has taken steps to eliminate some potentially offending products. However, the scope of Defendant's offerings—some 700,000 online products made by 6,800 independent suppliers— renders the task of policing gargantuan and thus unlikely to succeed all of the time. Even as to the approximately 10,000 eye wear products offered on Defendant's website, the undertaking would be significant. As Plaintiffs' filings indicate, Plaintiffs retain investigators to monitor certain websites, including Defendant's, to protect their trademarks. But the law cannot place on Plaintiffs an obligation to ensure that Defendant (and thousands of companies like it) comply with the trademark laws.

In this case, the potential harm to Plaintiffs outweighs any potential harm to Defendant because any harm to Defendant in this matter is purely monetary which would be gained at the expense of Plaintiffs through unauthorized use of Plaintiffs' registered trademarks. In assessing the risk of irreparable harm to Defendant, the Court "'excludes any burden it voluntarily assumed by proceeding in the face of a known risk'"—here, the risk that it may be sued if it sells counterfeit goods bearing Plaintiffs' marks. *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 888 (N.D. Ill. 2008) (quoting *Ty, Inc.*, 237 F.3d at 903). The fact that the Plaintiffs already sued Defendant for the same issue, and entered into a Settlement Agreement, demonstrates that Defendant knew of this risk.

### 4.    Effects on Non-Parties

"[E]nforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000), and "serves the public's interest in not being deceived about the products they are purchasing," *Miyano*, 576 F. Supp. 2d at 889. Therefore, the Court concludes that enjoining Defendant's use of the Oakley and Ray-Ban marks will serve the public interest and prevent harm to consumers by eliminating the possibility of confusion as to source and sponsorship.

### 5.    Scope of the Preliminary Injunction

Finally, the Court is cognizant of the requirements that an injunction be "precise and self-contained" in order to give sufficient notice to the enjoined party and that it be limited to the products actually at issue in the lawsuit. See *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 414-15 (7th Cir. 2008). To that end, the Court requested that the parties provide input into the contents of the TRO order. The Court will extend that order, but modify it slightly to limit it to eyewear and eyewear accessories. The Court makes this modification because

Plaintiffs have not presented any evidence that Defendant has sold any products other than eyewear or eyewear accessories that infringe on its protected trademarks.

## IV.    Conclusion

For these reasons, THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendant because Defendant consented to the jurisdiction of this Court pursuant to the terms of the valid and binding Settlement Agreement [8], and because Defendant directly targets its business activities toward consumers in the United States, including Illinois.   Specifically, Defendant is reaching out to do business with Illinois residents by operating the website at lightinthebox.com through which Illinois residents can purchase products.

THIS COURT FURTHER FINDS that Plaintiffs own the following trademarks ("Plaintiffs' Trademarks") for the goods listed below ("Covered Products"):

| Registration Number | Trademark | Goods |
| --- | --- | --- |
| 650,499 |  | For: Sunglasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |

| | | |
|---|---|---|
| 1,093,658 |  | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |

| 1,980,039 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
|---|---|---|
| 1,990,262 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 1,984,501 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |

| 3,151,994 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| --- | --- | --- |

THIS COURT FURTHER FINDS that issuing this Preliminary Injunction is appropriate because Plaintiffs demonstrated that their case has a likelihood of success on the merits; no adequate remedy at law exists; and Plaintiffs will suffer irreparable harm if the Preliminary Injunction is not granted. Plaintiffs have proved a *prima facie* case of trademark infringement because (1) Plaintiffs' Trademarks are distinctive marks and are registered with the U.S. Patent and Trademark Office on the Principal Register, (2) Defendant is not licensed or authorized to use any of Plaintiffs' Trademarks, and (3) Defendant's unauthorized use of Plaintiffs' Trademarks is causing a likelihood of confusion as to the origin or sponsorship of unauthorized Covered Products offered for sale and sold by Defendant. Furthermore, Defendant's continued, unauthorized use of Plaintiffs' Trademarks irreparably harms Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' reputation, loss of exclusivity, and loss of future sales. Monetary damages fail to address such damage and, therefore, Plaintiffs have no adequate remedy at law. Moreover, this harm to Plaintiffs outweighs any harm to the Defendant in being temporarily restrained and the public interest is served by the entry of this Order. Accordingly, this Court orders that:

1. Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined in the United States from:

   a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any unauthorized Covered Products;

   b. passing off or inducing others to pass off unauthorized Covered Products bearing Plaintiffs' Trademarks as produced by Plaintiffs or produced under the authorization, control or supervision of Plaintiffs;

   c. committing any acts calculated to cause consumers to falsely believe unauthorized Covered Products bearing Plaintiffs' Trademarks are sold under the authorization, control, or supervision of Plaintiffs; and

   d. manufacturing, shipping, delivering, or holding for sale unauthorized Covered Products which bear the Plaintiffs' Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof.

2. Plaintiffs' deposit of ten thousand dollars ($10,000.00) shall remain with the Court; this amount was determined adequate for the payment of such damages as Defendant may be entitled to recover as a result of a wrongful restraint hereunder.

IT IS SO ORDERED.

Dated: October 19, 2016

_____
Robert M. Dow, Jr.
United States District Judge